Argued July 6, decided July 25, 1911.

## WILLS v. ZANELLO.

[117 Pac. 291.]

Mechanics' Liens—Proceedings to Perfect—Time for Filing Claim.
1. Under Sections 7416, 7420, 7425, L. O. L., requiring the material-man to file within 30 days after the completion of the work or after he has ceased to furnish materials a claim for lien, and providing that no payment by the owner to any contractor before 30 days from the completion of the building shall defeat any lien for materials, a lien may be filed at any time after furnishing the last materials and before 30 days from the completion of the building, and a claim of lien filed after the furnishing of the materials and before the completion of the building is not filed prematurely.

Mechanics' Liens—Liens for Materials—Actions—Evidence.
2. In a suit to foreclose a lien for brick furnished a contractor, evidence held to show that the materialman furnished 603,300 bricks to the contractor which were used in the building.

Mechanics' Liens—Enforcement—Attorneys' Fees.
3. Where, in a suit to foreclose a lien, $4,814.11 was involved, of which $326 was disputed, but the lien for the whole amount was contested by defendant, who made no tender of the amount due, a decree fore-closing the lien for the amount demanded properly allowed $350 as attorneys' fees.

From Multnomah: William N. Gatens, Judge.

Statement by Mr. Justice Bean.

This is a suit in equity by A. N. Wills against G. Zanello and Fred Zanello, partners doing business as G. Zanello & Son, and the Portland Railway, Light & Power Company, a corporation, to foreclose a mechanic's lien on property owned by the Portland Railway, Light & Power Company in Sellwood, now a part of the City

of Portland, being blocks O and P, and the building, known as the "Car Barns" situated thereon. In the construction of the building, the defendants, G. A. Zanello & Son, had a contract with the Portland Railway, Light & Power Company to do the brick work; A. N. Wills, the plaintiff, having made an agreement with them to furnish the brick therefor at $8.00 per thousand, and plaintiff claims to have delivered 603,300 bricks, amounting to $4,814.40, after deducting a credit for sand of $12.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Albert H. Tanner* and *Mr. Franklin T. Griffin,* with an oral argument by *Mr. Tanner.*

For respondent there was a brief with an oral argument by *Mr. Andrew T. Lewis.*

MR. JUSTICE BEAN delivered the opinion of the court.

The complaint is in the usual form. The defendants, by their answer, allege that no more than 562,614 bricks were delivered by plaintiff and used in the building, amounting to $4,500.11, upon which they were entitled to a credit of $12, and deny the allegation as to attorneys' fees.

1. The first question for determination is raised by the demurrer to the complaint, and the testimony in the case. The defendants contend that the lien was not filed within 30 days after the material was furnished, as provided by Section 7420, L. O. L., nor within 30 days after the completion of the building, according to the time stipulated in such section, together with Section 7425, L. O. L., yet contend that it was filed prematurely, being filed before the completion of the building.

From the evidence it appears that the plaintiff commenced to deliver the brick about August 12, 1909, finishing his delivery thereof about September 27, 1909. The brick work was completed about October 13, 1909, and

the lien was filed on December 3, 1909, before the building was fully constructed. Construing together the two sections of the statute above alluded to, this Court has held that the laborer or materialman must file his lien within 30 days after the completion of the building, not necessarily within 30 days from the date of ceasing to furnish labor or materal. *Ainslie* v. *Kohn,* 16 Or. 363 (19 Pac. 97) ; *Coffey* v. *Smith,* 52 Or. 538 (97 Pac. 1079). The defendants claim that this lien was not filed within either of these sections; that is, that between the time allowed for filing, within 30 days from the time of furnishing the material and before the commencement· of 30 days after the completion of the building, there was a hiatus, during which period such lien could not be filed. In *Ainslie* v. *Kohn,* 16 Or. 363 (19 Pac. 97), it is.said that whether the claim was filed within 30 days after the work and material were furnished was unimportant, provided it was done within 30 days after the completion of the building. In this contention counsel for defendants relies upon the rule laid down in *Roylance* v. *San Luis Hotel Company,* 74 Cal. 273, at page 277 (20 Pac. 573, at page 575), but an examination of the opinion in that case, indicates that it is based upon a statute differing from ours. The reason for not allowing the lien to be filed prior to the completion of the building being that, "under the contract between the owner and the contractor, the owner agrees to pay the contractor a certain sum for constructing the building, and this sum is a fund which may be held under the statutes for the payment, so far as it will go, of all the claims of all the various subcontractors, for work and materials furnished by them to the contractor, who is the principal and head of all; and all the parties entitled to payment or contribution out of this fund should be able to reach the fund and get their proportionate shares thereof at the same time or within the same period of time." From

the language used it would appear that this rule, follow-
ing that prescribed in *Davis* v. *Bullard,* 32 Kan. 234 (4
Pac. 75) ; *Seaton* v. *Chamberlain,* 32 Kan. 239 (4 Pac.
89), and contained in Section 1428, 2 Jones, Liens, is
applicable to a different statute than ours. Jones, Liens,
§ 1432, states that, "Where there are distinct contracts
for different parts of a building, as for instance one con-
tract to do all the stone work and to furnish all the
material for the same, and another contract for the
brick work, and another for the wood work, each con-
tract must stand upon its own merits, and liens under
the different contracts must be filed within the time lim-
ited from the time of the completion of the work under
each contract." This work is instructive, but neither
of the sections referred to apply to our statute.

As to the necessity for prompt enforcement, it is said
in Phillips, Mechanics' Liens, § 322:

"It has been the policy of nearly every state which
has established a system of mechanic's lien to protect
the rights of owners and others who may become inter-
ested in the property, by requiring those who are entitled
to its benefits to be prompt in the enforcement of their
claims. The privileges secured mechanics and material-
men are unusual in their character, effective and some-
times oppressive in their behalf, and it is only just that
they should be required to be diligent in their enforce-
ment."

This reasoning and a careful examination of our
statute would indicate that the lien for materials can be
filed at any time after the furnishing of the last material,
and before the expiration of 30 days from the completion
of the building, when the materials for its construction
is furnished to the contractor or subcontractor in charge
thereof, who, by Section 7416, L. O. L., "shall be held
to be the agent of the owner for the purposes of this
act." Such we think, under the decisions construing the
above mentioned statutes in *Ainslie* v. *Kohn,* 16 Or. 363
(19 Pac. 97), and *Coffey* v. *Smith,* 52 Or. 538 (97 Pac.

1079), was the legislative intent. To hold that one furnishing material to the person having the contract for the brick work of a building must, before filing his lien, wait until the other contractors—the carpenter, tinner, plumber and painter—finish their contracts, and the building is completed (which is often a question of dispute) and thereby limit his time for such filing to 30 days thereafter, would in our opinion nullify a part of the provisions of the statute.

2. As to the amount in controversy, the evidence relative thereto does not appear to be in conflict, except as to the manner of arriving at the number of bricks furnished. The plaintiff and his foreman testify that the brick was loaded in the yard and started for the car barns under the supervision of the foreman, who kept a record thereof in the form of small stub books of about 100 tickets, of which there were an original, duplicate and triplicate. When a load was sent out one of these tickets was filled with the number of bricks forwarded, nearly every load containing 1,950 bricks. The duplicate and triplicate were then given to the teamster, one to be left at the place of delivery, and the other signed by the person to whom the bricks were delivered and then returned to plaintiff, who from the stub of his ticket book each day copied on tally sheets, from which he made up his account of 623,300 delivered bricks. After the completion of the brick work the plaintiff and defendants agreed to, and did, "lump off" the brick remaining unused, estimating the number at 20,000. If it was understood or expected by either of the parties that the brick would be estimated from the number in the walls of the building after its completion there would have been no necessity for "lumping off," or estimating such unused brick. When a wagon was filled it appears the number of bricks therein could be easily estimated. About two-thirds of the tickets were signed by the defendants or their foreman, and returned to plaintiff. The receipts for 97 loads,

hauled before defendants began construction, were unsigned for the reason that when delivery was made there was no one there to sign them. The plaintiff and his foreman testify that the record of these loads was kept in the same manner as that of the others.

For the purpose of ascertaining the number of cubic feet therein, two competent engineers measured the walls of the building, Mr. A. H. Richmond computing the number as 34,756, and Mr. D. W. Taylor as 34,444 feet; the number of brick to each cubic foot being variously estimated at from 18 to 21. The discrepancy in their measurements created a difference of about 6,000 bricks, taking an average estimate per cubic foot. Then there is the usual waste to be considered, making it evident that any estimate is inaccurate, and, unless agreed to by the parties themselves, or rendered absolutely necessary, such a method should not be adopted, except in connection with the other evidence. From a consideration of all the evidence, taking the testimony of the plaintiff and his foreman, and the tickets, and checking the latter by the estimates of the different experts, we are of the opinion that 603,300 bricks were delivered to defendants and used in the building, such being the number claimed to have been delivered by plaintiff, after deducting the 20,000 estimated as unused.

3. In accordance with our understanding the litigants stipulated that, taking the proceedings and records into consideration, the court should fix a reasonable amount as attorneys' fees, without the introduction of evidence in regard thereto. There being $4,814.11 involved, of which $326 is disputed, and no tender of the amount having been made, the lien for the whole amount being contested by defendants, we think $350, the amount allowed by the trial court, reasonable.

It follows that the decree of the lower court must in all things be affirmed, and it is so ordered.

                                                    AFFIRMED.